IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

Obstetric and Gynecologic Associates     Case No.  22-01174-als11
of Iowa City and Coralville, P.C.

    Debtor(s)

**MEMORANDUM OF DECISION**

(date entered on docket:  March 29, 2023)

    Before the Court is a Motion to Dismiss filed on behalf of S.K., an incapacitated Minor by and through his Conservator ("Conservator"), an objection by Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C. ("Debtor") and a Response filed by Minnesota Mutual Insurance Company ("MMIC").  The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.[1]  For the reasons that follow, the Court finds the Debtor's bankruptcy filing lacks the required element of good faith under a totality of the circumstances and dismissal of the case is in the best interests of creditors and the estate.

**FINDINGS OF FACT**

    In 2019 a medical malpractice suit[2] was filed in state court against the Debtor and other defendants.  The Debtor had malpractice insurance coverage under a policy issued by MMIC.[3]  Prior to trial, offers were extended by the plaintiffs' attorneys to resolve the pending dispute for the policy limits of $12 million in exchange for a full release for the Debtor and Defendant Dr. Jill Goodman.[4]  MMIC apparently refused to negotiate or make any settlement offer to the plaintiffs, which was expressly contrary to the position taken by the Debtor, its insured.[5]  The case was tried March 2022 and resulted in a verdict in favor of plaintiffs and a judgment against the Debtor and other defendants of approximately $97 million.[6]  Post-trial motions eventually reduced the damage

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq.
[2] *Kromphardt et. al v. Mercy Hospital et. al*, LACV081421 (Johnson County).
[3] Conservator Exhibit G.
[4] Supplement to Motion to Dismiss, ECF 257, Exhibit SK-K
[5] Transcript ECF 282; Page 32, Lines 12-22.
[6] Conservator Exhibit E.

award to $75,642,549 against the Debtor, the only remaining defendant.[7] Debtor appealed the verdict and requested that a stay be imposed pending appeal without posting the required bond or allowing a bond in a reduced amount. On October 4, 2022 the Iowa Supreme Court denied these requests.[8]

A series of emails submitted to the Court detail the parties' pre-bankruptcy postures and the ongoing efforts to resolve the dispute and judgment.[9] Allegedly, MMIC again refused to make an offer of settlement or to engage in settlement negotiations. Eventually, Debtor's counsel was informed that collection efforts, including execution against the Debtor's assets, would be pursued unless its settlement demands were met.[10] These included: payment of the policy limits; dismissal of the state court appeal; assignment of all potential causes of action; and Debtor's cooperation in any suits related to legal malpractice. According to the record the Debtor was interested in negotiating settlement both before the trial and before filing for bankruptcy.[11]

When settlement did not occur, the Conservator issued a general execution on October 10, 2022 to levy against the Debtor's assets, and also identifying MMIC as surety for the Debtor.[12] The sheriff arrived at the Clinic on October 19, 2022.[13] On October 31, 2022 the Debtor filed a voluntary chapter 11 bankruptcy petition believing this was its only option to protect its assets, remain in business and serve its patients. The Debtor's Chapter 11 petition was executed by Dr. Jill C. Goodman, one of its principals.[14] The required schedules were filed later and were signed by Jeffrey T. Varsalone, one of the Debtor's bankruptcy professionals.[15]

Within days of its petition the Debtor filed a Motion for Relief from Stay to allow the pending appeal to continue before the Iowa Supreme Court and a Joint Motion with MMIC[16] to escrow the $12 million policy proceeds. The Conservator objected to both. The Court granted the stay relief.[17] The request to escrow funds was withdrawn before decision.[18] Meanwhile, in state

---

[7] Conservator Exhibit F.
[8] Supplement to Motion to Dismiss, ECF 257, Exhibit SK-L.
[9] Supplement to Motion to Dismiss, ECF 257, Exhibits SK-K, SK-P.
[10] Debtor's Objection to Motion to Dismiss, ECF 268, Exhibit 9, pages 1-2.
[11] Transcript ECF 282; Pages 32-33, lines 20-25, 1-2.
[12] Conservator Exhibit R.
[13] Debtor Exhibit 2.
[14] Debtor's Chapter 11 Petition, ECF 1.
[15] Conservator Exhibit AA.
[16] Motion (JOINT) for Authority to Place Insurance Proceeds in Escrow, ECF No. 18; and Motion for Relief from Stay, ECF 19.
[17] Minute Order Granting Motion For Relief From Stay, ECF 231.
[18] Minute Order Regarding Joint Motion for Authority to Place Insurance Proceeds in Escrow, ECF 230.

court, the Conservator filed an order to show cause against MMIC for payout of the policy proceeds. In response, the Debtor filed an emergency motion for sanctions, seeking both compensatory and punitive damages, against the Conservator for violation of the automatic stay.[19]

The Debtor's Motion was denied and MMIC was found to be without standing, both decisions have been appealed.[20]

On January 20, 2023 the Conservator filed the pending Motion alleging bad faith as cause for the Debtor's chapter 11 case to be dismissed or converted asserting the following grounds:

1) Debtor does not believe the bankruptcy filing is beneficial to the creditor body, had non-bankruptcy options and does not understand the costs and burdens associated with its chapter 11 case;
2) The bankruptcy filing is a litigation tactic to avoid payment of the bond;
3) Debtor is financially healthy;
4) There is no potential for reorganization;
5) The case involves a two-party dispute;
6) There is an appearance of impropriety between MMIC and the Debtor.

Later, the Conservator filed a "support document" that expanded upon the facts underlying its original Motion to Dismiss.[21] In response to this filing the Debtor sought a continuance for the following reasons: the supplemental document was longer and more detailed than the original Motion, that it had inadequate time to prepare a response, and a new issue involving financial condition and insolvency had been raised. The Court denied the Motion to Continue and ordered that the solvency issue be bifurcated and heard separately on a later date.[22] The Debtor then filed an objection to the support document.[23]

At the hearing, the Conservator called Eric Brewer as a witness to testify on the financial condition of the clinic. The Debtor objected raising a *Daubert*[24] issue to Brewer's qualification as an expert and the information he relied upon in reaching his conclusions. The Court sustained the objection to allow the Debtor time to submit a formal *Daubert* objection and argument.[25] At the conclusion of the hearing the Motion to Dismiss was placed under advisement.

The financial condition and solvency issues were scheduled for hearing on April 5, 2023.

---

[19] Motion for Sanctions for Violation of Automatic Stay 11 U.S.C. § 362(k), ECF 72.
[20] In Re: *Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C.*, 3:22-cv-00080-SMR-SBJ (IASD).
[21] Supplement to Motion to Dismiss, ECF 257.
[22] Minute Order Denying Motion to Continue, ECF 260.
[23] Debtor's Objection, ECF 290.
[24] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[25] Motion to Exclude Opinions and Testimony of Eric Brewer, CPA, ECF 288.

## LEGAL STANDARDS

Bankruptcy Code §1112(b)(1) provides that: "[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . ." Multiple examples of "cause" are identified within the statute.[26] There is an implied element of good faith in the filing of any bankruptcy petition. Many courts, including the Eighth Circuit, have recognized that bad faith is "cause" for dismissal or conversion under the statute.[27] "Once lack of good faith is raised as an issue of cause for dismissal, the debtor bears the burden of proving that the filing was made in good faith."[28]

"The use of the term 'bad faith' in many cases is unfortunate. It carries with it a connotation that someone had a sinister purpose and has subjectively attempted to abuse the bankruptcy process . . . ."[29] A finding of malevolent intent or other similar subjective conduct are not required to establish a lack of good faith. Rather, the determination rests on whether a debtor's filing is an effort to "*unreasonably deter* [or attempts to] harass creditors . . . *[rather than]* an attempt to effect *a speedy, efficient reorganization on a feasible basis.*"[30] Concluding that bad faith exists for purposes of dismissal under the bankruptcy code requires a difficult distinction between permissible and impermissible motives.[31]

"There is no single test for determining when a debtor has filed in bad faith. Rather, courts consider the totality of the circumstances, including . . . "the court's evaluation of the debtor's financial condition, motives, and the local financial realities."[32] Various factors have developed to guide this analysis.[33] Such lists are helpful, but are not exhaustive. There are a multitude of

---

[26] 11 U.S.C. §§ 1112(b)(4)(A-P).
[27] *Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.),* 235 F.3d 375, 379 (8th Cir. 2000) citing *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 162 (3d Cir. 1999); *Trident Assoc. Ltd. P'Ship v. Metro Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 130-31 (6th Cir. 1995); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994); *Carolin Corp v. Miller*, 886 F.2d 693, 700 (4th Cir. 1989); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988); *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1071-72 (5th Cir. 1986).
[28] *Stage I Land Co. v. United States Hous. & Urban Dev. Dep't,* 71 B.R. 225, 229 (D. Minn. 1986); see also *In re Setzer*, 47 Bankr. 340, 345 (Bankr. E.D. N.Y. 1985) (citing *Marine Harbor Properties, Inc. v. Manufacturers' Trust Co*., 317 U.S. 78, 85, 87 L. Ed. 64, 63 S. Ct. 93 (1942)).
[29] *Muskogee Envtl. Conservation Co. v. Scriminger (In re Muskogee Evntl. Conservation Co.),* 236 B.R. 57, 68 (Bankr. N.D. Okla. 1999).
[30] *In re Marsch*, 36 F.3d at 828 (citing *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)) (emphasis added).
[31] *In re Kerr*, 908 F.2d 400, 404 (8th Cir. 1990).
[32] *Lariat Cos. V. Wigley (In re Wigley)*, 557 B.R. 671, 675 (B.A.P. 8th Cir. 2016) citing *Cedar Shore Resort, Inc.,* 235 F.3d at 379.
[33] *Cedar Shore Resort, Inc.*, 235 F.3d at 379 (citing *In re Little Creek Dev. Co.,* 779 F.2d at 1072.

inquiries that may be related to a thorough examination under the identified standard because, by its very nature, the totality of the circumstances occurs on a case-by-case basis.[34]

## DISCUSSION

The bases for the Motion to Dismiss alleged by the Conservator and the Debtor's objections under the applicable standards can be summarized, and in some instances combined, into a few categories.

### 1. Purpose of Filing

An important inquiry in a good faith analysis is whether the petition was filed with a valid bankruptcy purpose.[35] The Supreme Court has identified two of the basic purposes of Chapter 11 as: (1) "preserving going concerns;" and (2) "maximizing property available to satisfy creditors."[36] To demonstrate a proper purpose, both elements must be established. Although the Debtor mechanically recites these grounds the record reflects alternative motivations that lie outside these acceptable purposes.

Statements made by, or on behalf of, the Debtor establish that it disagrees with the jury's verdict. In explaining the pending appeal, the record specifically includes the following statements: "We want the State Court to proceed because we do not feel like it was justice;"[37] "[W]e want the appeal to move forward because we - - we feel like the judgment was reached in error and we would like the Supreme Court to review it and decide on the merits of the case;"[38] and that the appeal will "vindicate" Dr. Goodman.[39] Both MMIC and the Debtor have represented to the Court that there are a variety of points raised in the appeal that support their conclusion that the Iowa Supreme Court will order a new trial or reduce the verdict.

---

[34] *In re Erkins*, 253 B.R. 470, 474-75 (Bankr. D. Idaho 2000) (citing *In re Arnold*, 806 F.2d at 939 ("The existence of good faith depends on an amalgam of factors and not upon a specific fact")). Many cases are cited for general propositions related to the factors and analysis under the totality of the circumstances standard. See *In re Wigley*, 557 B.R. 671 (affirming the bankruptcy court's denial of a motion to dismiss based upon its determination that a valid purpose existed for debtor's bankruptcy filing). *Wigley* is cited in this pending matter for purposes of comparing its similarity to the facts involved in this Debtor's case. Reliance upon specific facts in an unrelated case requires careful review. *Id.* at 677. The facts and circumstances before the bankruptcy court in *Wigley* are different than those involving the Debtor here. *In re Wigley*, Case No. 14-40541 ECF 198 Order Denying Motion to Dismiss or Convert, Denying Confirmation and Setting Deadlines, entered November 18, 2015, Constantine, J.
[35] *United States Tr. v. Stone Fox Capital LLC (In re Stone Fox Capital LLC)*, 572 B.R. 582, 590 (Bankr. W.D. Pa. 2017).
[36] *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 437, 119 S. Ct. 1411, 1414 (1999); accord *Toibb v. Radloff*, 501 U.S. 157, 163, 115 L. Ed. 2d 145, 111 S. Ct. 2197 (1991).
[37] Transcript ECF 282; Page 46, Lines 22-23.
[38] Transcript ECF 282; Page 83, Lines 2-5.
[39] Transcript ECF 114; Pages 66-67, Lines 25 and 1-3.

Based upon the Debtor post-petition conduct an additional motivation is protecting MMIC from the Conservator's collection efforts while the appeal is pending. The policy proceeds are one of the single most important sources for payment of the judgment. As previously stated, the Conservator filed an order to show cause against MMIC in the state court action seeking payment of the policy proceeds.[40] In response, the Debtor filed an emergency Motion for Sanctions against Conservator for violation of the automatic stay seeking both compensatory and punitive damages.

At the hearing[41] the Debtor withdrew its request for damages and proceeded to argue that: 1) the policy proceeds were property of the estate; 2) the automatic stay prevented any action to collect against the policy or MMIC; and 3) the judgment was not technically final for purposes of payment under the policy.[42] With no damage request before the court, the Debtor's pending Motion essentially transformed into either a request for declaratory relief or a request to extend the automatic stay for the benefit of MMIC. After limited evidence and legal argument it was obvious that the Debtor's primary motivation was to obtain the benefit of a stay to protect MMIC and the policy proceeds in the pending state court action. Most telling is the following exchange:

> COURT: . . . it seems to me . . . what you're essentially asking me to do is extend the automatic stay to any ability of the conservator to collect on its judgment for the time period of the appeal. Isn't that what you're asking me to do?
> COUNSEL: Your Honor, I think that is the practical effect of what's being requested today.[43]

In its bench ruling the Court held: 1) the payable insurance policy proceeds were not "property of the estate" entitled to protection under the automatic stay; 2) Conservator did not violate the automatic stay because the state court action was filed solely against MMIC, a non-debtor; and 3) the judgment was final and enforceable.[44]

This misguided effort to expand the protections of the automatic stay beyond what is generally permissible under the bankruptcy code is an indication that the Debtor's motivation in filing was not in good faith or for a proper purpose.

---

[40] Counsel for MMIC had admitted to being obligated to remit the proceeds. Motion to Dismiss Supplement, ECF 257, Exhibit SK-M.
[41] MMIC filed a response and appeared at the hearing in support of the Debtor's position. The Court held that MMIC had no standing in the proceeding. MMIC has appealed that decision.
[42] Transcript ECF 114.
[43] Transcript ECF 114; Pages 55-56, Lines 22-25, 1-3.
[44] Decision is currently being appealed to the District Court for the Southern District of Iowa, In Re: *Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C.*, 3:22-cv-00080-SMR-SBJ.

Of additional concern is the relationship between the Debtor and MMIC in the context of settlement and what has transpired in the bankruptcy filings. After careful consideration, the Court has determined that under the totality of the circumstances standard these facts are relevant to a determination of whether this case meets the element of good faith, not only in filing the petition, but in its planning and how the case is being administered. The record reflects that: 1) MMIC paid pre-petition fees to Debtor's bankruptcy professionals,[45] and it has offered to finance those fees post-petition; 2) MMIC has offered the Debtor favorable terms on its current insurance coverage when no one else would;[46] and 3) MMIC has offered to extend credit to the Debtor in exchange for a security interest in its personal property and perhaps the single most valuable asset – the potential bad faith claim against MMIC.[47] Dr. Goodman's testimony highlights the conflict related to the Conservator's demand for settlement and its implications for MMIC:

> . . . take the bad faith claim, make everything go away but then as soon as we got close to like, okay, maybe we do that, ***the hard part is is like, MMIC's representing us*** so they're paying all these things and now we're like, oh, yeah, you guys can take this bad faith claim and go against the company that's been representing us and paying for my defense . . . [48]

A question arises about whether the bankruptcy was motivated by a proper purpose or to obtain financial advantages from MMIC in exchange for filing bankruptcy to attempt to protect it from making payment under the policy.[49]

The Debtor supplies little evidence to establish its good faith. No detail is provided to demonstrate that maintaining the business as a "going concern" benefits anyone but the principals of the Debtor. The message has clearly been conveyed that the Debtor wishes to continue its business, as usual, and serve its patients and the community. Payment to creditors is an afterthought to those primary goals, at least until the appeal is decided. The record contains no evidence to establish a bankruptcy filing to reorganize or liquidate as a going concern, will in any way (large or small) maximize the estate for the benefit of creditors.

---

[45] Applications to Employ Debtor Professionals, ECF Nos. 57 and 58.
[46] Transcript ECF 282; Page 49, Lines 5-17; See also Motion to Obtain Secured Credit, ECF 222 Exhibit B.
[47] Motion to Obtain Secured Credit, ECF 222 Exhibit B.
[48] Transcript ECF 282; Page 46, Lines 12-18 (emphasis added).
[49] No satisfactory explanation has been provided to justify MMIC's involvement in the bankruptcy case. Legitimate questions and concerns arise related to MMIC's willingness to assist the Debtor in paying for its bankruptcy professionals and financing its business operations, all of which appear to fall outside the policy terms and conditions.

The record supports a finding that the Debtor's filing was not undertaken in good faith. Instead, the purpose integral to its decision to seek the protections afforded in bankruptcy was to serve the self-interests of the Debtor and the interests of MMIC.

### 2. 11 U.S.C. §1112(b)(4)(A)

For purposes of this subsection, the term "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[50] The Conservator's Motion raises these issues as a basis for dismissal in addition to the Debtor's bad faith.

The Debtor repeatedly informs the Court that it has and continues to explore whether it should propose reorganization or liquidation.[51] The lack of progress in making this choice is puzzling. These same two options have been available since the judgment was entered and should have been under discussion since before the petition date. Notwithstanding the passage of time and the involvement of multiple professionals, a decision has not been reached on how to advance this "relatively simple" case.[52] The Debtor has asked to further delay a decision by requesting an extension of the exclusivity period.[53] Throughout the life of the case, there has been no justification, for why reaching a decision is so difficult and elusive on the primary purpose of a chapter 11 bankruptcy case: the plan.

The Debtor's objection infers that it is inappropriate to predict the outcome of a plan that has yet to be filed. Not only does this argument render application of § 1112(b)(4)(A) superfluous, but it also is unsupported by any legal analysis.[54] Based upon the bankruptcy code and the Debtor's schedules it is not difficult to surmise that confirmation of a plan of reorganization, or a liquidating plan, under the requirements of §1129 is unlikely. Under the circumstances of this case, the size of the Conservator's claim renders the possibility of reorganization unreasonable, if not entirely, impossible. One court has addressed the eventual outcome when one large creditor holds the majority of the total debt owed.

---

[50] *In re Miell*, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009).
[51] Transcript ECF 282; Page 125, Lines 2-7.
[52] Transcript, ECF 114; Page 12, Line 11.
[53] Motion to Extend Chapter 11 Exclusivity Period, ECF 251.
[54] *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994) ("A Chapter 11 case can be dismissed at any time. Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired. Creditors, likewise, need not incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated. The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless.") (internal citations omitted); see also *Loop Corp. v. United States Tr.*, 379 F.3d 511, 519 (8th Cir. 2004).

> Given the economic dominance of Albertsons' claim, there appears to be no opportunity for Paolini to craft a plan of reorganization with an accepting impaired class, which precludes any possibility of this Court confirming a plan of organization for Paolini over the objection of Albertsons. As such, Paolini's efforts to reorganize under Chapter 11 of the Bankruptcy Code given his present composition of creditors is doomed to failure. With the certainty of this fate, it is pointless to attempt confirmation of the existing Plan and this Court can now conclude that the reorganization attempts of Paolini are futile.[55]

The above example, in the context of this case, serves to predict that any plan proposed by the Debtor would not meet its goal of being of benefit to all of its creditors. The most basic understanding of any plan that could be drafted results in the Conservator being entitled to nearly all proceeds. Dr. Goodman testified that the Debtor's physical assets are worth $30,000.[56] Using the value of its judgment, the Conservator, which has a claim making up 99.9% of the total creditor claims would be entitled to a distribution of those funds in the amount of approximately $29,900. The remaining creditors would be entitled to share $100 among their total claims. This same mathematical proportion results with any chosen value.

The payment scenario worsens for the creditors when the loan from MMIC to the Debtor is considered. MMIC provided $75,000 to the bankruptcy estate that is secured by its personal property and must be repaid before any distribution to secured creditors from the liquidated assets.[57]

Preserving any value of the Debtor through liquidation as a going concern is also problematic in the implementation. To say that liquidation under Chapter 11 maximizes the value of an entity is to say that there is some value that otherwise would be lost outside of bankruptcy. "Two empirically based economic assumptions underlie the attempt to preserve the value of a failing company: (1) orderly liquidation is likely to produce more value--or to avoid more loss-- than piecemeal liquidation; and (2) going-concern value is likely to be higher than liquidation value."[58]

Under the current scenario, the Debtor has offered no credible evidence that its plan to sell the business as a going concern will maximize the value of the estate. No detail has been supplied as to how the Debtor intends to meet the goal of maximizing the value of its estate. Even if the

---

[55] *In re Paolini*, 312 B.R. 295, 315 (Bankr. E.D. Va. 2004).
[56] Transcript ECF 282; Page 106, Lines 16-19.
[57] Order on Motion to Obtain Secured Credit, ECF 233.
[58] Elizabeth Warren, Bankruptcy Policymaking In an Imperfect World, 92 MICH. L. REV. 336, 350 (1993).

Debtor could provide convincing scenarios that it could obtain confirmation of a plan, or liquidation would somehow increase the amount of proceeds available to creditors, the continuing delay and administrative expenses involved in achieving this outcome would likely result in less proceeds to distribute to creditors, not more.

### 3. Two Party Dispute

"Petitions in bankruptcy arising out of a two-party dispute do not per se constitute a bad-faith filing by the debtors."[59] However, such a circumstance is a relevant factor under the totality of the circumstances.[60] "[W]here a debtor's reorganization effort involves essentially a two-party dispute which can be resolved in state court, and the filing for relief under Chapter 11 is intended to frustrate or delay the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for cause is warranted."[61] Both the Debtor and MMIC contend that even if there is a two-party dispute it is between MMIC and the Conservator.[62] As noted above, actions undertaken by the Debtor have attempted to frustrate or delay the Conservator's attempts to collect the judgment against its assets and from the insurance proceeds under the policy issued by MMIC. MMIC's involvement in this contested matter and the parties' identical argument on this issue are curious. The evidence is sufficient to support a conclusion that the interests and goals of the Debtor and MMIC are fundamentally aligned against the Conservator which realistically amounts to a two-sided dispute that can and should be resolved in state court.

If a debtor "faces no threat from any of its other purported creditors, [its] financial problems are a two-party dispute suitable for resolution" which supports a finding of bad faith.[63] Of importance, other than the judgment, the schedules do not include the requested detail about when specific obligations were incurred with the listed creditors which prevents any analysis as to the age of the listed debts. Dr. Goodman's testimony was that on the petition date no threat of collection enforcement had been undertaken by its other creditors.[64] Accordingly, it is more than possible that the debts owed were either within normal payment terms or slightly overdue. There is no indication that long term defaults existed on vendor payments.

---

[59] *In re Stolrow's, Inc.*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988).
[60] See *In re Crown Fin.*, 183 B.R. 719 (Bankr. M.D.N.C. 1995).
[61] *Id.* at 723.
[62] Transcript ECF 282; Page 129-130, Lines 23-25 and 1; See also Debtor's Objection and MMIC Response to Motion to Dismiss, ECF Nos. 263 and 268.
[63] *In re State St. Houses, Inc.*, 305 B.R. 738, 742 (S.D. Fla. 2003), aff'd, 356 F.3d 1345 (11th Cir. 2004).
[64] Transcript ECF 282; Page 31, Lines 5-18.

Courts have also relied upon "[t]he lack of a meaningful number of unsecured creditors in relation to the indebtedness owed to one major creditor [as] a factor in deciding whether the Chapter 11 case was filed in bad faith."[65] In this case, the Debtor's schedules reflect that, other than the Conservator, it owes relatively modest obligations to a small number of creditors. Both Schedule D[66] and Dr. Goodman's Affidavit[67] confirm that the Debtor owed no secured debt on the petition date. Schedule E/F indicates tax claims in the amount of $20,321.87 and unsecured creditor obligations (excluding Conservator's judgment) totaling $190,429. A simple calculation utilizing the obligation amounts reported by the Debtor reflect that 99.9% of its scheduled debt is owed to the Conservator.

Under the totality of the circumstances this factor weighs in favor of a determination that the Debtor's bankruptcy filing lacked good faith.

### 4. Other Factors

Having reviewed these factors in the context of the record the Court concludes neither of the following allegations raised by Conservator weigh in favor of Debtor's bad faith.

#### a. Appeal Bond

Courts are divided in whether filing bankruptcy instead of obtaining a supersedeas bond amounts to a lack of good faith. Cases that resulted in dismissal include: *In re Karum Group Inc.*, 66 B.R. 436 (Bankr. W. D. Wash.1986); *In re Wally Findlay Galleries, Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984); *In re Smith*, 58 B.R. 448 (Bankr. W.D. Ky. 1986). "The cases granting dismissal on bad faith grounds, with the exception of *Karum*, dealt with smaller judgments where the debtor had the ability to satisfy the judgment without losing the ability to stay in business."[68] Other courts have concluded that dismissal was not warranted where larger judgments which would result in a debtor's inability to operate would be at risk.[69]

Dr. Goodman testified that the Debtor could not obtain a bond in the amount required under state law.[70] Therefore, when the sheriff had been directed to move forward under an execution

---

[65] *In re Lezdey*, 332 B.R. 217, 222 (Bankr. M.D. Fla. 2005).
[66] Debtor's Schedules, ECF 147.
[67] Declaration of Dr. Jill C. Goodman, ECF 45.
[68] *In re Boynton*, 184 B.R. 580, 582 (Bankr. S.D. Cal. 1995).
[69] *In re Alton Tel. Printing Co.*, 14 B.R. 238 (Bankr. S.D. Ill. 1981); *In re McLaury*, 25 B.R. 30 (Bankr. N.D. Tex. 1982); *In re Corey*, 46 B.R. 31 (Bankr. D. Haw. 1984).
[70] Transcript ECF 282; Page 40, Lines 5-11.

against the Debtor it believed that all of its equipment and supplies would be immediately seized affecting its ability to operate and would result in the closure of the clinic.

Standing alone, the failure to post a bond in the state court action does not rise to the level of bad faith under the circumstances of this case.

### b. Financial Condition and Insolvency

The Conservator asserts that the Debtor's business was financial healthy because it was conducting business operations and regularly paying its bills at the time it filed its petition in bankruptcy, which constitutes bad faith.

The Court has reviewed the record before it and concludes that evidence as to the financial condition or solvency of the Debtor is not necessary to reach a conclusion under the totality of the circumstances. The amount of the judgment and Dr. Goodman's testimony serves to establish that the Debtor did not have the ability to pay its outstanding obligations on the date of filing.

Having considered the record, further hearing or evidence on the issues of financial condition or insolvency is unnecessary because it would not result in a different outcome on the Motion to Dismiss.

## CONCLUSION

The burden to show cause for dismissal of a Chapter 11 bankruptcy rests on the movant by a preponderance of the evidence.[71] Once a movant has made a *prima facie* showing of bad faith, the burden shifts to the debtor to establish that the bankruptcy was filed in good faith.[72]

Having reviewed all the evidence and the record the Court concludes that the Conservator has established a prima facie case for dismissal.[73] Due to a lack of evidence and legal authority to support its arguments, the Debtor has failed to meet its burden to establish that its bankruptcy was filed in good faith, that the value of its estate is not diminishing and that it can obtain confirmation of a plan. Accordingly, cause exists to dismiss or convert the Debtor's bankruptcy case and the Court is mandated to select one of these options.[74]

---

[71] *In re Muskogee Envtl. Conservation Co.*, 236 B.R. at 59.
[72] See, e.g., *In re Nichols*, 223 B.R. 353, 355 (Bankr. N.D. Okla. 1998) (citing *In the Matter of Namer*, 141 B.R. 603, 606 (Bankr. E.D. La. 1992)).
[73] "Sufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it may later be proved to be untrue." *Prima Facie*, Black's Law Dictionary (11th ed. 2019).
[74] *In re McQuillen Place Co., LLC*, 609 B.R. 823, 829 (Bankr. N.D. Iowa 2019) (quoting *In re Miell*, 419 B.R. at 366).

Converting the case would accrue additional administrative and professional fees beyond those incurred in during the chapter 11 proceeding. The Debtor's personal property is subject to a security interest held by MMIC and the insurance policy proceeds cannot be used to pay creditors other than the Conservator. The value or ability to pursue any contingent claims in a chapter 7 case are not a predictable source of funds to pay unsecured creditors. Allowing a chapter 7 case to proceed in an effort to pay obligations owing to a small number of unsecured creditors which hold insubstantial claims in comparison to the Conservator's is not in their best interests. Upon dismissal, those creditors will have independent remedies they may elect to exercise, if necessary, to collect their respective outstanding obligations resulting in the possibility of a better outcome for them than converting to a chapter 7 case.

**IT HEREBY ORDERED:**

1. The Motion to Dismiss is granted;
2. The Objection to the Motion to Dismiss is overruled;
3. The case is dismissed, and;
4. The hearing scheduled for April 5, 2023 is canceled.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Everyone in this Chapter Case